58 CCPA

**Application of James W. EDWARDS, Harry J. Larrigan and Shelly W. Mays, Jr.**

**Patent Appeal No. 8451.**

United States Court of Customs and Patent Appeals.

April 29, 1971.

Robert J. Schaap, St. Louis, Mo., attorney of record, for appellant. John D. Upham, Joseph D. Kennedy, St. Louis, Mo., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals insofar as it affirmed the rejection of claims 69, 74, 85, 89, 111 and 114 of appellants' application serial No. 472,829, filed July 19, 1965, for "Electrostatic Screen Process Printing." The board allowed 36 claims. We affirm the board's decision.

The claims on appeal define a method and apparatus for electrostatic printing on objects having conical or cylindrical surfaces, such as tumblers and cups. The object to be printed is mounted on a rotatable mandrel, which may serve as one of the electrodes creating an electrostatic field in which the object is placed. A flat printing screen is positioned in evenly spaced-apart relationship with the object's surface. The screen may serve as the other electrode in creating the electrostatic field, and it is masked to form a pattern which is to be printed on the object. The screen is moved linearly in its own plane in timed relationship to the rotation of the object's surface, in such manner that each elemental line of the surface tangentially approaches the screen, reaches a position of closest approach, and moves away from the screen. Electroscopic ink particles are applied to the screen in such a manner that, at any instant, ink particles are applied only to a narrow portion of the screen adjacent to the elemental surface line to be printed at that insant, i. e., the line of closest approach at that instant. One way this may be accomplished is by feeding the ink particles onto the screen through a narrow slit in a suitable ink reservoir. The electrostatic field causes the electroscopic ink particles to move from the screen to the object, where they are deposited along the line which is the line of closest approach at that instant.

As an alternative embodiment, appellants disclose modifications whereby the object and the screen may be in contact, and whereby printing may be accomplished at any instant along the line of tangential contact at that instant.

Claim 69, which provides for closest approach printing, and claim 74, which provides for contact printing, are the method claims on appeal:

69. The method of electrostatically screen process printing articles which have a central axis and an annular surface of revolution about said central axis with a screen which has a substantially flat printing surface and can be shifted with respect to the an-

nular surface of said article; said method comprising establishing an electrostatic field between said screen and said article, establishing an axis of rotation of said article concentric with its central axis and in a position so that a line of closest approach to said screen is parallel to the substantially flat surface of said screen, rotating said article about its central axis so that the annular surface to receive the ink tangentially approaches, forms an instantaneous elemental line of closest approach and tangentially departs from the screen, shifting said screen in timed relation to the rotation of the article and causing the screen to move in a tangential plane which lies in the line of closest approach, and feeding a quantity of electroscopic ink to said screen in a substantially thin flat line only along the elemental line of closest approach where relative movement exists between the surface of the screen and the thin flat line, said thin flat line being substantially equal to the dimension of the screen which is transverse to the direction of movement of said screen and occupying a small dimensional area of the screen in the direction of movement of the screen, and where the ink is passed through opened areas of said screen and propelled by said electrostatic field thereby causing printing to occur only along the elemental line of closest approach to the screen.

74. The method of electrostatically screen process printing articles which have a central axis and an annular surface of revolution about said central axis, with a screen which has a substantially flat printing surface and can be shifted with respect to the annular surface of said article; said method comprising establishing an electrostatic field between said screen and said article, establishing an axis of rotation of

said article concentric with its central axis in a position so that a line of contact exists between the annular surface of said article and the substantially flat surface of said screen, rotating said article about its central axis so that the annular surface to receive the ink tangentially approaches, forms an elemental line of instantaneous tangential contact and tangentially departs from the screen, shifting said screen in timed relation to the rotation of the article and causing the screen to pass through and maintain contact with said article at the line of instantaneous tangential contact, and feeding a quantity of electroscopic ink to said screen in substantially a thin flat line only along the elemental line of instantaneous tangential contact where relative movement exists between the surface of the screen and the thin flat line, said thin flat line being substantially equal to the dimension of the screen which is transverse to the direction of movement of said screen and occupying a small dimensional area of the screen in the direction of movement of the screen, and where the ink is passed through opened areas of said screen and propelled by said electrostatic field thereby causing printing to occur only along the elemental line of instantaneous tangential contact with the screen.[1]

The apparatus claims correspond generally to the method claims, through the use of "means for" language paralleling the steps of the method claims.

All of the appealed claims stand rejected for obviousness over Bauman [2] in view of Childress '698 [3] and Childress '341.[4]

Bauman discloses printing frusto-conical tumblers with conventional (non-electroscopic) inks. The tumblers are mounted on mandrels which rotate in timed relationship to the movement of a flat pattern screen. The tumblers are in con-

1. No issue has been raised regarding appellants' use of "annular" to include things other than ring-shaped objects, nor regarding the recitation that a certain plane "lies in" a line.

2. U. S. Patent 2,484,671, October 11, 1949.

3. U. S. Patent 3,081,698, March 19, 1963.

4. U. S. Patent, 3,245,341, April 12, 1966, on an application filed April 15, 1963.

tact with the screen, through which ink is forced by a squeegee. There is no teaching of how the ink is applied to the screen, but we have no reason to doubt appellants' assertion that it is applied in the conventional manner, i. e., by placing a mass of ink on a rather large portion of the screen and spreading and pressing it through with the squeegee.

Childress '698 is the basic patent in the field of electrostatic stencil screen printing. It discloses, in one embodiment, a continuous belt-type screen which is electrically charged and moved in timed relationship with a flat object to be printed, such as a strip of paper coming off a roll. Dry particles of electroscopic ink are applied to the screen by rollers. The flat screen and the flat strip to be printed are passed near a flat belt having an opposite electrostatic charge, causing the ink particles to move through the screen, wherever there are holes in the screen, to the paper strip.

More important, however, is an alternative embodiment shown in Fig. 4 of Childress '698.

FIG. 4.

VOLTAGE SUPPLY SOURCE

TO FIXING STATION

CLYDE O. CHILDRESS
LOUIS J. KABELL
INVENTORS

[A4000]

In this embodiment a pair of cylindrical screens 70 and 72 are used to print on a flat object which moves in timed relationship with the screens. Ink is applied to the screens by applicators 74 and 76.

Childress '341 also discloses electrostatic printing on a moving flexible substrate, such as a strip of paper. The ink particles are applied to a charged, rotating drum-type screen which contacts a substantial portion of the strip, which portion is held against the drum by a pair of spaced-apart rollers. A metal plate on the opposite side of the strip has an electric polarity opposite to that of the drum screen, causing the particles to move from the open pattern spaces in the drum toward the plate and to be intercepted by and deposited on the strip. Printing occurs, at any given instant,

along the entire portion of the strip which is in contact with the plate and drum.

Appellants advance several alternative contentions for patentability of the appealed claims over the cited references. They first contend that there is no suggestion in the art for combining the teachings of Bauman and Childress '698. We disagree. In view of the advantages stated in Childress '698 of electrostatic printing over wet-ink printing, motivation was provided to use the electrostatic technique for printing on curved surfaces, and, in the absence of foreseeable difficulties, to adapt the apparatus of Bauman to that purpose.

Appellants next contend that the combination of Bauman and Childress '698 does not render the claimed inventions obvious. Again we disagree. The only difficulty which we can see in combining the teachings of the two references is in substituting a suitable electrostatic ink feeding mechanism for the squeegee of Bauman. The appealed claims recite the line-at-a-time technique of applying ink to the screen. The purpose of such application is apparently to prevent distortion and smudging of the image due to relative motion between the object and all portions of the screen except the portion straddling the line of closest approach or line of contact. We find, however, that line-at-a-time application of ink is shown in Fig. 4 of Childress '698, as mentioned above, and apparently serves the same purpose. We see no difference in principle between narrow-portion inking of a curved screen for printing on a flat object, as in Childress, and narrow-portion inking of a flat screen for printing on a curved object, as in appellants' claims.

Appellants further argue that the affidavit of Dr. Edwards, one of the inventors, proves that the claimed inventions are unobvious. This affidavit sets forth the expert qualifications of Dr. Edwards and of Clyde Childress, one of the inventors in the Childress '698 and Childress '341 patents. It states that Childress' employer, Electrostatic Printing Corporation of America, had an agreement with Edwards' employer, Monsanto Company, providing that each company would "perform research in the area of electrostatic screen process printing in order to discover a suitable technique for electrostatically printing conically shaped containers." The affidavit further states that Edwards discussed the problem at length with Childress and that Childress advised "that they were only able to effectively print on flat surfaces with electrostatic screen process printing techniques."

The affidavit also mentions several problems encountered and solved by appellants relating to electrostatic printing of conically shaped containers. These included development of a suitable device for delivery of electroscopic ink and metering electroscopic ink to a printing screen, preparing the substrate surface so as to dissipate the charge, selection of a proper ink, providing a means for periodically cleaning the screen in order to eliminate accumulated ink particles and providing means for fixing the ink and for operating on a mass-production basis.

We find two principal weaknesses in the affidavit. The first is that it does not allege prior familiarity with the Bauman reference. The "prior art" which must be considered under 35 U.S.C. § 103 includes that reference and must be considered in applying the statute, even if it was unknown to the inventors at the time they made their invention. The second weakness is that the problems allegedly solved by appellants are not directly related to the broad invention defined by the claims. For example, no limitations as to types of ink or means for cleaning the screen are recited in the claims. The claims thus read on devices which do not include such features. In view of these deficiencies, we are not convinced that the methods and devices defined by the appealed claims were unobvious under § 103.

Accordingly, the decision of the board is affirmed.

Affirmed.